## CHARLEY LEWIS v. STATE.

No. 2505.  Opinion Filed May 13, 1916.

(157 Pac. 271.)

1.  **CRIMINAL LAW—Appeal—Failure to File Briefs—Effect.**  In a homicide case where the defendant appeals from a judgment of conviction and no brief is filed or oral argument made, this court will examine the record and the evidence and if no error prejudicial to the substantial rights of the defendant is apparent will affirm the judgment.

2.  **HOMICIDE—Evidence—Weight and Sufficiency.**  In a homicide case the evidence reviewed and held sufficient to support the verdict of the jury finding the defendant guilty of manslaughter in the first degree and assessing his punishment at fifty years' imprisonment in the penitentiary.

*Appeal from District Court, Carter County;*
*W. F. Freeman, Judge.*

Charley Lewis, convicted of manslaughter in the first degree, appeals.  Affirmed.

*James H. Mathews,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J.  Plaintiff in error, Charley Lewis, herein referred to as the defendant, was informed against for the murder of one Ray Pack.  The verdict was manslaughter in the first degree and fixing the punishment at imprisonment in the penitentiary for the term of fifty years.  From the judgment rendered upon the verdict he appeals.  No brief has been filed and we are not advised as to what the plaintiff in error complains of or relies upon for a reversal.  When the case was called for final submission it was submitted on the record.

The evidence shows that the homicide was committed on First avenue, between "C" and Caddo streets in the city of Ardmore on the 24th day of October, 1914.  The question for

the jury on the evidence was, whether the act was justifiable in self-defense, as was claimed by the defendant, or murder or manslaughter in the first degree.

W. A. Jackson was the principal witness for the prosecution. He was the only person besides the defendant who saw the killing and who testified as to what took place at the time. He testified that he conducted the California Cafe on East Main street, Ardmore; that on the day of the killing about eight o'clock he went with Ray Pack to the home of Pearl Lewis, the divorced wife of the defendant to call on a young lady from Ft. Worth, who was visiting Pearl Lewis and Ray Pack was calling on Pearl Lewis. That they left the Lewis home together at half past eleven and after they had turned into First avenue and going west they met the defendant and he hallooed to Pack, "Throw up your hands you God damn son-of-a-b——ch, I am going to kill you," and Pack said, "Don't shoot me Charley," and the defendant commenced shooting and Pack fired a shot. That they were ten or twelve feet apart at the time and witness ran behind a box car.

Dr. Hardy testified that he inspected the body and found a gun shot wound in the left side that passed through the heart and lungs and it must have caused instant death; that he found three other wounds in the legs and the bones were broken where the bullets struck.

As a witness for the state Pearl Lewis testified that about two months after their marriage she secured a divorce from the defendant; that they had been divorced about a year at the time of the homicide; that Ray Pack, the deceased had been keeping company with her for about two months and they were to be married one week from the day he was killed. That a few minutes after the deceased and Mr. Jackson left her home that night she heard the shooting and with her mother and sister she went to where the shooting occurred and Ray Pack was lying dead on the side-walk.

As a witness in his own behalf the defendant Charley Lewis testified that he married Pearl Lewis in 1912, and they were

divorced in 1913; that a short time before the homicide occurred they had agreed to remarry; that he did not know that Ray Pack was engaged to marry his former wife; that along about the 1st of October a circus was in town and as he was trying to get through the crowd at the circus he accidently rubbed against Ray Pack who was with his former wife and Pack pulled a pistol and jabbed him three or four times saying, "Get out of my way you damn son-of-a-b—ch, don't cross my path again or I will blow your God damn head off." That several persons told him that the deceased had made threats against him; that on the night the homicide occurred he was on his way to his room and met two men and as he passed them he recognized Ray Pack, who had his hand in his overcoat pocket; that Pack started to run him off the end of the side-walk and he said to Pack, "Don't start that, you have your little pistol have you." That Pack said nothing, and he then "told Pack a time or two to take his hand off that gun," that Jackson said something to Pack and Pack pulled a pistol and shot at him and he commenced shooting at Pack as fast as he could pull the trigger on his automatic. That he shot at Pack because he thought he was trying to kill him, and he was trying to defend himself.

On cross examination he admitted that at the time of the killing he was under a peace bond for carrying a pistol and assaulting Pearl Lewis, his former wife.

Upon the facts, which the foregoing is a brief outline, and as to which there was but little conflict, the case was submitted to the jury by the trial court in a charge fully and fairly covering the law of the case.

After a careful examination of the record and of the evidence in the case, we are of the opinion that no error was committed by the court on the trial, and that the defendant has been fairly tried and properly convicted. The judgment is therefore affirmed.

ARMSTRONG, J., concurs.