## BILL OWENS v. STATE.

No. A-9163.  Feb. 5, 1937.
(64 Pac. [2d] 1234.)

Kenneth B. Kienzle, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, J. Upon information filed in the district court of Pottawatomie county October 3, 1935, in substance charging that in said county on the 30th day of November, 1933, Bill Owens did unlawfully, willfully, and feloniously shoot and kill one Hoyt Hughes, the defendant was tried and convicted of manslaughter in the first degree; the jury by their verdict fixing his punishment at imprisonment in the penitentiary for a term of 20 years. A new trial having been denied, he appealed from the judgment pronounced in pursuance of the verdict by

filing in this court on June 15, 1936, a case-made with petition in error attached.

Extensions of time in which to serve and file briefs were granted to counsel for the defendant before and after the case was submitted on the record. However, no briefs have been filed on his behalf and no appearance was made for oral argument when the cause was called for hearing and final submission.

It has often been said by this court that in a homicide case, where the defendant appeals from a judgment of conviction and no brief is filed or oral argument made, this court will examine the record and the evidence and, if no error prejudicial to the substantial rights of the defendant is apparent, will affirm the judgment. Lewis v. State, 12 Okla. Cr. 357, 157 Pac. 271; Northcutt v. State, 22 Okla. Cr. 410, 211 Pac. 521; Arthurs v. State, 35 Okla. Cr. 126, 248 Pac. 873.

The fact that the deceased was shot and killed by the defendant is not disputed. The homicide was committed in the city of Shawnee, at the Wolcott Hotel a few minutes after 8 o'clock, the evening of the date alleged. The deceased, Hoyt Hughes, a negro boy, was employed as a bell hop and to operate the elevator. The defendant came into the lobby of the hotel and entered the elevator; a few minutes later two shots were heard. The elevator door opened and the defendant rushed out through the lobby holding a pistol in his hand. The deceased was lying in the elevator and died there without speaking, as the result of two gunshot wounds, one in the back and one in the abdomen.

The question for the jury on the evidence was whether the act was justifiable in self-defense as was claimed by

the defendant, or murder or manslaughter in the first degree.

Jack Belisle, the principal witness for the state, testified that he was clerk at the Wolcott Hotel, on duty; that Hoyt Hughes was working on the night shift as bell-boy and operated the elevator; that the defendant came up from the basement to the hotel lobby, a few minutes later he heard a scuffle in the elevator then between the main and second floor, then he heard a shot, then another scuffle, then he heard another shot; at that instant the elevator was down to the main floor. The defendant ran from the elevator holding a revolver in his hand and passed out to the street. Hoyt Hughes, the negro bellboy, was lying on the floor of the elevator, apparently dead.

As a witness in his own behalf, the defendant, Bill Owens, testified that he was living with Bobbie Turner, a married woman, off and on before serving a term in the state penitentiary at McAlester; that he left the penitentiary in June, 1933, and since then they had been living together; that day they arrived at Shawnee and were broke; that they went to the Wee rooming house and he went out and sold his jacket to the boy who testified as a witness for the state for enough to eat supper on; and when he came back Bobbie was gone, pretty soon she returned, her dress was torn and she was crying. After she told him what had happened, he went over to the Wolcott Hotel, aiming to whip the deceased and stomp him through the floor of the elevator; that he got on the elevator and when they started up he hit the deceased and knocked him up against the side of the elevator and the deceased pulled a pistol; that he grabbed it and while they both had hold of the pistol it went off and the deceased fell over; that knowing he was an ex-convict he ran away

instead of going to the police station; so he went back and told Bobbie to meet him in Tulsa, and from there they went to Pueblo, Colo.; that he worked there about five months before the officers arrested him; that he had served two terms in the state penitentiary and one in the state reformatory.

Upon the facts, which the foregoing is but a brief outline, and as to which there was but little conflict, the case was submitted to the jury by the trial court in a charge fully and fairly covering the law of the case.

After a careful examination of the case, both as to the law and as to the evidence, we have failed to discover anything whereof the defendant has any just right to complain. In our opinion the evidence in the case shows beyond any reasonable doubt that the defendant committed a cold-blooded assassination by deliberately shooting an unarmed man in the back. Upon the undisputed facts, we think the jury would have been justified in assessing the extreme penalty of the law, and their failure to assess the same confirms our conclusion that the defendant was accorded a trial more lenient even than a fair and impartial one.

The judgment of the lower court will therefore be affirmed.

DAVENPORT, P. J., and BAREFOOT, J., concur.